*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 19-CF-1026 & 23-CO-0619

ANDRE BECTON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeals from the Superior Court of the
District of Columbia
(2016-CF1-017315)

(Hon. Juliet J. McKenna, Motions Judge & Trial Judge)

(Argued September 16, 2025                    Decided December 11, 2025)

*Gregory M. Lipper* for appellant.

*Mark Hobel*, Assistant United States Attorney, with whom *Edward R. Martin, Jr.*, United States Attorney, and *Chrisellen R. Kolb*, *Daniel J. Lenerz*, *Lindsey Merikas*, *Monica Trigoso*, and *Tracy Suhr*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and THOMPSON, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*: In these consolidated matters, Andre Becton appeals his convictions for the second-degree murder of Darnell Peoples and related offenses as well as the trial court's denial of his post-conviction motion

alleging ineffective assistance of counsel under D.C. Code § 23-110. At his jury trial, Mr. Becton asserted that Mr. Peoples was the first aggressor and that he acted in self-defense. Mr. Becton claims that the trial court erred by preventing him from introducing evidence of Mr. Peoples's prior domestic assault allegations to contradict the prosecution's evidence of Mr. Peoples's jovial nature. On appeal, he also claims the trial court erroneously denied his Section 23-110 motion, in which he alleged that his trial attorney was ineffective by failing to move for suppression of cell phone evidence that the government used to argue consciousness of guilt. Lastly, Mr. Becton argues that reversal is warranted based on the cumulative impact of the deficient performance of Mr. Becton's trial counsel, combined with the preclusion of certain character evidence and first-aggressor evidence. For the following reasons, we affirm Mr. Becton's convictions and the trial court's denial of his Section 23-110 motion.

## I.       Factual Background & Procedural History

### A.       The Shooting

On the night of September 15, 2016, Darnell Peoples was accompanying his friend, Debra Moore,[1] on foot during an excursion in Southeast D.C. to secure drugs. Ms. Moore testified that as the pair continued to the 600 block of Mellon Street S.E.,

---

[1] As the only testifying eyewitness, Ms. Moore testified as to the following events that occurred that night.

Mr. Peoples approached Mr. Becton and others huddled in a circle playing a game of craps. Mr. Peoples, who was intoxicated with PCP at the time,[2] began engaging with Mr. Becton and the other players. Mr. Peoples asked why the players had their behinds in the air. Ms. Moore also testified that Mr. Peoples referred to the players using an antigay epithet. The craps players asked Mr. Peoples to leave but Mr. Peoples continued, so Mr. Becton told Mr. Peoples, "get the f--k on about your business." In response, Mr. Peoples replied, "[d]on't talk to me like that, man" and reached his arms towards Mr. Becton. According to Ms. Moore's testimony, Mr. Becton attempted to push Mr. Peoples's hands away, but Mr. Peoples grabbed Mr. Becton and the two began tussling. During this struggle, Mr. Becton pulled out his firearm from his waistband and fired a shot into Mr. Peoples's leg and fired a second shot into the left side of Mr. Peoples's neck.[3] Mr. Becton then fled the scene in his car, driven by his friend. In responding to a 911 call for a shooting at 613 Mellon Street, members of the Metropolitan Police Department (MPD) arrived at the scene and found Mr. Peoples injured and lying in the street. Before becoming unconscious, Mr. Peoples told police that Dre from Trenton Park shot him. When asked why he was shot, Mr. Peoples responded, "Because I'm old" and that "[Mr. Becton] was

---

[2] We know this based on the report and testimony of the toxicologist the government called.

[3] This was shown through expert testimony at trial.

shooting up everybody." Mr. Peoples died from his injuries shortly thereafter. MPD later learned that when Mr. Peoples stated "Dre . . . from Trenton Park" he was referring to appellant, Andre Becton, who was from the Trenton Park neighborhood and informally known as "Dre."

## B.    The Investigation

A couple days after the shooting, on September 17, 2016, MPD officers interviewed Ms. Moore. Ms. Moore told police that after the shooting, she witnessed the gunman jump into a red car and flee the scene, and she provided part of Becton's license plate number. She also described the shooter. Police later obtained Mr. Becton's vehicle on September 30, 2016, seizing it in connection with their ongoing homicide investigation.

On October 3, 2016, Mr. Becton voluntarily went to the MPD Homicide Branch to inquire why his car was seized and agreed to an interview, without legal counsel, by Detective Joshua Branson and Detective Gabriel Truby. During the interview, detectives questioned Mr. Becton about the death of Mr. Peoples, and Mr. Becton insisted that he was not the shooter. Even after Detective Branson informed Mr. Becton that the District of Columbia recognizes self-defense, Mr. Becton

maintained that he was not the shooter.[4]  While he admitted to being on Mellon Street that night, he denied any involvement in the shooting.  During the interview, to show detectives that the eyewitness had misidentified him as the shooter, Mr. Becton voluntarily showed Detective Branson a photograph of himself taken on the night of the shooting to show what he was wearing that night.  Mr. Becton texted the photograph to the detective at the conclusion of the interview, and this exchange was later included in Detective Branson's "Affidavit in Support of an Application for a Search Warrant" [hereinafter Affidavit].  A few weeks later, Mr. Becton was arrested and charged with multiple offenses arising from the shooting, with the most serious being first-degree murder while armed.

After Mr. Becton's arrest, Detective Branson applied for a search warrant for Mr. Becton's iPhone.  Detective Branson's Affidavit set out the basis for searching Mr. Becton's phone, summarizing the investigation, including the photo Mr. Becton supplied to police, and specifying that he had the phone with him when he was arrested.  The Affidavit also included a summary of Detective Branson's training related to cell phones.  The Affidavit lacked, however, a description of the type of evidence Detective Branson anticipated finding on Mr. Becton's iPhone.  A Superior

---

[4] According to defense counsel's argument during trial, Mr. Becton denied being the shooter based on his erroneous belief that the District of Columbia does not recognize self-defense.

Court judge found probable cause and granted the search warrant to permit Detective Branson to seize Mr. Becton's iPhone to obtain "[c]ell phone number, call log, phone book, any video recordings, any audio recordings, any photographs, text messages and voice messages which is Evidence . . ." The search warrant did not place any date restrictions as to the digital data that could be extracted from the iPhone. Investigators thereafter conducted a forensic extraction of Mr. Becton's iPhone and obtained the items outlined in the warrant, including deleted data such as text messages and call records. The government later obtained additional information from Mr. Becton's cell phone provider, which included search and location data.

## C. The Trial

In advance of trial, Mr. Becton's appointed counsel filed numerous motions, but did not file a motion to suppress the cell phone data extracted from Mr. Becton's phone. Mr. Becton's trial strategy was to assert self-defense. Prior to trial, the court heard and granted the government's motion to preclude Mr. Becton from introducing three of Mr. Peoples's prior domestic assault incidents. Mr. Becton wanted the jury to learn that, in 2013, Mr. Peoples was arrested and charged with domestic assault against his wife, Ms. Peoples. This case was dismissed for want of prosecution. Mr. Becton also wanted to introduce evidence that in 2015, Mr. Peoples's romantic partner alleged that Mr. Peoples assaulted her in an application for a protective order, which was withdrawn two months after it was filed. Lastly, Mr. Becton wanted to

introduce evidence of Mr. Peoples's alleged assault of his daughter in 2016. Only in the 2013 incident did an arrest occur. All three instances lacked any allegation of Mr. Peoples being intoxicated.

The court excluded Mr. Becton's proffered evidence of Mr. Peoples's prior domestic violence charges pursuant to Fed. R. Evid. 403 as elaborated under *Shepherd v. United States*, which held the trial court did not err in excluding first-aggressor evidence when its probative value is outweighed by its prejudicial effect. 144 A.3d 554, 561 (D.C. 2016). The court considered the facts surrounding the domestic violence allegations and found that the events were dissimilar to Mr. Becton's case because the prior allegations involved Mr. Peoples's domestic relationships and there was no indication that Mr. Peoples was intoxicated during the prior assaults. The trial court reasoned that admission of the prior domestic violence incidents would confuse the jury. The court further determined that exclusion was necessary to prevent the jury from speculating or concluding that because of his domestic violence history Mr. Peoples was more likely to have been the first aggressor, which would be unduly prejudicial and provide little probative value.

During trial, the government presented physical evidence from their experts and testimony from both character witnesses and various officers involved with the

case. The government presented expert testimony from a toxicologist, cell phone expert, and ballistics expert. The government also played for the jury Mr. Becton's initial interview with detectives Branson and Truby where he described the events of that night and denied any involvement in the shooting. The government's principal eyewitness was Debra Moore, who was with Mr. Peoples the night of the shooting. However, the defense impeached Ms. Moore multiple times with her prior inconsistent statements and attempted to discredit her due to her mental illness and drug abuse.

The government presented evidence related to Mr. Peoples's demeanor and his jovial personality the night of the shooting. Ms. Peoples also testified that when she spoke to Mr. Peoples the night of the shooting, he was happy and "[l]aughing, giggling, joking like he normally do." After the government finished questioning Ms. Peoples, Mr. Becton's counsel initiated a bench conference and argued that the government's questioning opened the door for them to introduce Mr. Peoples's prior domestic assault incidents. The court again precluded the defense from introducing Mr. Peoples's prior bad acts. Ms. Peoples's testimony about Mr. Peoples's demeanor that night was corroborated by Ms. Moore who described him as "joyful

and loveable" and testified that he was joking around. Ms. Moore also testified that Mr. Peoples was not angry or violent that night even while high on PCP.

During closing arguments, the government argued that Mr. Becton committed first-degree murder of Mr. Peoples, emphasizing he did not appreciate Mr. Peoples's jokester nature. The government pointed to Mr. Becton's initial police interview and the data extracted from Mr. Becton's iPhone as evidence of his consciousness of guilt.

Conversely, although prevented from introducing Mr. Peoples's prior bad acts of domestic violence, defense counsel emphasized that Mr. Peoples was the first aggressor who had been reaching for Mr. Becton's gun in his waistband. Defense counsel argued that following the shooting, all of Mr. Becton's actions to cover up his involvement were based on his erroneous belief that self-defense was not recognized in the District of Columbia. Defense counsel further argued that Mr. Becton's denials during the initial police interview and the data from the web searches (for example, searches of "a database for looking up if you have any

warrants") and deletions of post-shooting messages showed only that he was worried that he would get charged with murder even if he had acted in self-defense.[5]

In rebuttal, the government reiterated the physical evidence from the crime scene and the testimony of Ms. Moore and Ms. Peoples. Additionally, the government emphasized Mr. Becton's statements made in the initial police interview. The government did not reference Mr. Becton's cell phone data in its rebuttal.

The court instructed the jury on first-degree murder, second-degree murder, and self-defense. The jury ultimately acquitted Mr. Becton of first-degree murder but convicted him of second-degree murder. Mr. Becton was sentenced to twenty-five years with five years of supervised release for (1) second-degree murder while armed, (2) possession of a firearm during a crime of violence, and (3) unlawful possession of a firearm. Mr. Becton timely filed his direct appeal.

### D.    Section 23-110 Motion

While Mr. Becton's direct appeal was pending, he filed a motion pursuant to D.C. Code § 23-110, alleging ineffective assistance of counsel. Mr. Becton claimed that his trial counsel was deficient by failing to seek suppression of the cell phone

---

[5] Mr. Becton did not testify at trial.

data pursuant to the Fourth Amendment. Mr. Becton argued that, had counsel filed a motion to suppress, the cell phone data would have been suppressed because Detective Branson's Affidavit was deficient and the judge had no basis to find probable cause to grant the search warrant. Mr. Becton argued further that he was prejudiced by counsel's allegedly deficient performance because without the cell phone data, the government would not have been able to show consciousness of guilt.

During the evidentiary hearing, Mr. Becton's trial counsel expressed that his failure to file a motion to suppress the cell phone data was not a strategic decision; rather, he did not believe there to be a meritorious legal basis to challenge the warrant. He testified that he decided not to challenge the warrant because, in his view, such a motion would likely fail due to the good faith exception to the warrant requirement.[6] Ultimately, the court denied Mr. Becton's Section 23-110 motion.

First, the trial court determined that Mr. Becton was able to show that his counsel was deficient because the suppression motion would have been successful

---

[6] Under the good-faith exception to the exclusionary rule, if the officers reasonably relied on the judge's approval of a warrant, then the evidence obtained pursuant to that warrant should not be excluded. *See generally United States v. Leon*, 468 U.S. 897 (1984). However, the good-faith exception does not apply when the affidavit lacks an "indicia of probable cause" or when the warrant is "facially deficient." *Id.* at 923.

had trial counsel filed it. The court reasoned that the Affidavit in support of the warrant was devoid of any facts that would support a reasonable inference that evidence of the crime existed on Mr. Becton's cell phone. The trial court found that, based on Mr. Becton's counsel's testimony, his decision to not challenge the warrant fell below an objective standard of reasonableness. Nevertheless, the court found that trial counsel's deficiency did not result in prejudice.

The court ruled that Mr. Becton failed to show prejudice, first noting that the government's evidence was "incredibly strong." The court also found that the only phone evidence the jury had during deliberations was "the deletions of four text messages and/or telephone calls close in time to the shooting of Mr. Peoples." The parties focused their closing arguments on only the internet deletions. The trial court found that the cell phone data was consistent with the defense's argument in closing that Mr. Becton believed he was going to be charged with murder and so his actions reflected his fear and belief that self-defense was not recognized. As a result of this, the trial court reasoned that the entirety of the cell phone data was not before the jury, and the limited portion that was had minimal evidentiary value. Thus, the court denied Mr. Becton's Section 23-110 Motion for failure to show prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). Mr. Becton timely appealed the trial court's denial of his Section 23-110 motion on July 27, 2025.

## II.    Discussion

In this consolidated appeal, we review the issues pertaining to both Mr. Becton's direct appeal and the denial of his Section 23-110 motion. As to his 23-110 motion, Mr. Becton argues that he received ineffective assistance of trial counsel. He argues he was prejudiced as a result of his counsel's failure to file a motion to suppress the cell phone data. As to his direct appeal, Mr. Becton argues that the trial court's evidentiary rulings excluding his first-aggressor evidence prevented him from presenting a complete defense. He argues not only should the trial court have allowed him to present initial-aggressor evidence but also that the government's evidence during trial opened the door to such evidence. He contends that the cumulative effects of these errors warrant reversal of his convictions. We address each argument in turn.

## A. Mr. Becton's Section 23-110 Motion

"This court reviews a trial court's denial of a Section 23-110 motion for ineffective assistance of counsel as a mixed question of law and fact." *Sanders v. United States*, 330 A.3d 1013, 1027 (D.C. 2025). "We accept the trial court's factual findings unless they lack evidentiary support in the record and review its legal conclusions de novo." *Id.* Under *Strickland*, a defendant can make a claim for ineffective assistance of counsel by showing (1) that counsel's performance was deficient such that it fell outside of the range of "reasonable professional assistance"

and (2) that "the deficient performance prejudiced the defense" such that the defendant was deprived of a fair trial. 466 U.S. at 687, 689.

On appeal, Mr. Becton argues that reversal of the denial of his Section 23-110 motion is warranted because the trial court erred in finding that he failed to show prejudice as a result of his trial counsel's deficient performance. First, he claims it was improper for the court to focus solely on whether the cell phone records were consistent with the defense theory in analyzing prejudice. He argues that although the cell phone data was theoretically consistent with his theory, the trial court failed to consider how the admission of the cell phone data made his defense less persuasive in practice. He also disputes the court's view of the strength of the government's case, arguing that the government's case was largely built on evidence of undisputed facts surrounding the identity of the shooter but lacked credible evidence disputing his contention that Mr. Peoples was the initial aggressor. Specifically, he argues the key witness, Debra Moore, was not credible and the government's other evidence merely identified Mr. Becton as the shooter, which was not in dispute.[7] The government contends that the trial court properly denied Mr. Becton's Section 23-110 motion because he failed to show a reasonable probability

---

[7] Mr. Becton points out that the multiple times when Ms. Moore was impeached, and the government's other physical evidence, such as ballistics and autopsy, only pointed to the identity of the shooter, which was not in dispute.

of a different outcome even if the evidence he disputed were suppressed, given that the cell phone data was insignificant to the government's overall case-in-chief. As we discuss, we conclude that trial counsel's performance did not cause prejudice.

We need not review both prongs of an ineffective assistance of counsel claim if it is clear that an appellant cannot prove prejudice. *See Faltz v. United States*, 318 A.3d 338, 345-46 (D.C. 2024) (declining to address the performance prong because appellant could not prove prejudice); *see also Woodard v. United States*, 738 A.2d 254, 259 (D.C. 1999) (disposing of the Strickland claim solely on prejudice). Therefore, "we need not determine whether [Mr. Becton's] trial counsel rendered constitutionally deficient representation because we are convinced that [Mr. Becton] has not shown a reasonable probability or a substantial likelihood that the outcome of the proceeding against him would have been different." *Gardner v. United States*, 140 A.3d 1172, 1196 (D.C. 2016). Here, assuming without deciding that Mr. Becton's trial counsel performed deficiently, we conclude that the trial court did not err in finding that Mr. Becton failed to establish prejudice. To show prejudice, including from failure to litigate a motion to suppress, a "defendant must show that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Cosio v. United States*, 927 A.2d 1106, 1131-32 (D.C. 2007) (en banc) (quoting *Strickland*, 466 U.S. at 694); *Sanders v. United States*, 330 A.3d at 1027. To make this determination, we "must

consider the totality of the evidence adduced at trial." *Cosio*, 927 A.2d at 1132 (citing *Strickland*, 466 U.S. at 695). In considering the impact of the deficiencies, we recognize that "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland*, 466 U.S. at 695-96.

First, despite Mr. Becton's contention that the trial court should not have focused on how the defense used the cell phone evidence, we conclude this was only one aspect of the court's analysis of the totality of the evidence. In making its prejudice determination, the trial court considered how both parties used the cell phone data but primarily focused on the strength of the government's other evidence. While the court noted that the cell phone data was theoretically consistent with the defense's theory, this was only towards the end of the court's prejudice analysis. We see no error in the trial court's analysis, wherein, to determine the extent of prejudice, the trial court considered both the strength of the government's other evidence and how both parties incorporated the cell phone data into their narrative at trial.

Furthermore, Mr. Becton was not prejudiced because introduction of Mr. Becton's web search history and deleted communications did not alter the evidentiary picture. The cell phone data represented only a small part of the government's overall evidence and was eclipsed by the testimonial evidence and

physical evidence that formed the core of the government's case. The cell phone data extraction report was only briefly referenced in the government's closing argument. The government did not question witnesses about the specifics of the data, nor did the government need to since the strongest evidence of Mr. Becton's consciousness of guilt was the police interview. This is reflected in the trial court's analysis, which pointed to other evidence in the record that the government used to support the defendant's guilt and consciousness of guilt, such as the decedent's dying declaration, Mr. Becton's initial police interview, and the ballistic and autopsy evidence.[8] The first police interview was the government's primary evidence for Mr. Becton's consciousness of guilt because he denied any involvement in the shooting, and it is not unreasonable for a jury to have been fully persuaded by the government's narrative that the defendant's own statements were more indicative of consciousness of guilt than the cell phone data, which served only to support the government's narrative but was not essential to it.

---

[8] While Mr. Becton devotes much of his brief to the weakness of the government's case based on its key witness – Ms. Moore, he fails to recognize that Ms. Moore's testimony was necessary for his self-defense claim. During trial, both parties used facts derived from Ms. Moore's testimony to build their theory of the case. Given that Mr. Becton exercised his right not to testify, his theory of self-defense relied heavily on Ms. Moore's testimony that Mr. Peoples initiated the interaction with him.

Likewise, we reject Mr. Becton's argument that the Fourth Amendment violation permeates the entirety of his case. While Mr. Becton argues that the impact of the Fourth Amendment violation in his case is similar to the prejudice the cell phone data caused in *Green v. United States*, Mr. Becton's case is easily distinguished from *Green*. 231 A.3d 398 (D.C. 2020). In *Green*, the unsuppressed cell phone data was emphasized throughout the government's case to confirm the government's timeline and corroborate eyewitness testimony of Green as the shooter. *Id.* at 414-15. In contrast, in Mr. Becton's case, the cell phone data was referenced only briefly in the government's argument and used only to support the stronger consciousness of guilt evidence: Mr. Becton's own statements during his voluntary initial police interview where he denied any involvement in the shooting. The differences in the use of the data in conjunction with the strength of the government's other evidence distinguishes the impact the unsuppressed cell phone data had in this case from *Green*. The unsuppressed cell phone data, at issue here, had only an isolated, trivial effect on the outcome of the trial because it was not the primary evidence the government used to show consciousness of guilt and was only briefly referenced in closing.[9] Thus, any error in admission of the cell phone data was harmless. *See Strickland*, 466 U.S. at 696. Accordingly, Mr. Becton is unable

---

[9] This is further supported by the fact that the government did not mention the cell phone data in its rebuttal argument.

to show prejudice that but for his attorney's failure to file the suppression motion, his trial would have had a different outcome.[10]

For the foregoing reasons, we hold that the trial court did not err in denying Mr. Becton's Section 23-110 Motion.

### B. The Trial Court's Exclusion of the Prior Domestic Violence Evidence

Next, we turn to Mr. Becton's claim for reversal raised in his direct appeal, based on the trial court's decision to exclude evidence of Mr. Peoples's prior domestic violence allegations. As part of his direct appeal, Mr. Becton argues that the trial court abused its discretion in allowing the government to introduce evidence of Mr. Peoples's jovial and non-violent nature, while excluding evidence of Mr. Peoples's prior bad acts involving domestic abuse charges.

Both the Due Process Clause and the Sixth Amendment to the Constitution guarantee defendants "'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467

---

[10] We acknowledge appellee filed a sur-reply brief which further emphasized its previous arguments related to whether defense counsel's performance was deficient, specifically as to the application of the good-faith exception had a motion been filed. Since we reach the conclusion that Mr. Becton is unable to show prejudice, there is no need to address the performance prong. *Gardner*, 140 A.3d at 1196.

U.S. 479, 485 (1984)), and so "[o]ur interpretation and application of the rules governing admissibility of evidence must therefore accommodate that right." *Richardson v. United States*, 98 A.3d 178, 189 (D.C. 2014). With this in mind, this court reviews evidentiary rulings for an abuse of discretion. *(Markus) Johnson v. United States*, 960 A.2d 281, 294 (D.C. 2008). To determine if a trial court abused its discretion, we will consider (1) whether the determination was within the trial court's discretion, (2) whether "the trial court recognize[d] that it had this discretion, and, if it did, did the trial court purport to exercise it," (3) whether "the record reveal[s] sufficient facts upon which the trial court's determination was based," and (4) whether "the trial court exercise[d] its discretion erroneously." *Johnson v. United States*, 398 A.2d 354, 363-65 (1979).

Mr. Becton argues that the trial court impermissibly concluded that the circumstances surrounding decedent's domestic violence charges were not similar to the current case because no domestic violence was involved and the decedent was sober during the prior instances but intoxicated with PCP during the events that gave rise to Mr. Becton's case. He adds that he should have been permitted to introduce evidence of Mr. Peoples's prior domestic abuse when the government opened the door during trial by presenting evidence of the decedent's jovial and non-violent nature. He contends that as a result of the trial court's improper exclusion of the

decedent's prior bad acts, he was denied a complete defense as established under *California v. Trombetta*, 467 U.S. 479, 485 (1984).

The government counters that the trial court did not err in excluding the prior domestic violence allegations because the trial court properly relied on *Shepherd* in finding the prior allegations inadmissible under Rule 403. The government also argues that the evidence that was presented by the decedent's wife related to the decedent's nature as a jokester, not whether he was peaceful or violent. Likewise, the government argues that the testimony concerning whether Mr. Peoples was aggressive or violent was specific to his behavior the night of the shooting.

### 1. The trial court did not abuse its discretion in excluding Mr. Becton's proffered first-aggressor evidence

We conclude that the trial court did not abuse its discretion in excluding the prior domestic violence evidence proffered to show that Mr. Peoples was the first aggressor. To support a claim of self-defense, a defendant in a homicide trial may introduce evidence showing that the decedent was the first aggressor. *Shepherd*, 144 A.3d at 558 ("[A]n accused . . . may attempt to show that the decedent was the aggressor by showing that the dead person was a bellicose and violent individual."). "[T]he accused may present evidence of prior acts of violence committed by the victim . . . even if unknown to the accused." *Id.* (quoting *(Markus) Johnson*, 960 A.2d at 301). In analyzing first-aggressor evidence focused on the decedent, the

court balances the probative value and prejudicial impact by considering [1] "the form of proof [and whether they are] accusations or convictions, [2] whether presenting it would waste trial time or confuse the issues, [3] remoteness in time, [4] the decedent's character in the interim, and [5] the type of violence evidenced by the prior act." *Id.* at 559 (citation modified).

Here, the issue of admission of first-aggressor evidence was within the trial court's discretion as an evidentiary ruling. *See (Markus) Johnson*, 960 A.2d at 294. The record shows that the trial court recognized it had discretion because it conducted a full analysis in accordance with *Shepherd* and fully explained its reasoning for exclusion. The trial court's reasoning is supported by the record. The trial court did not abuse its discretion in excluding evidence of Mr. Peoples's prior domestic violence charges because the trial court properly applied the factors outlined in *Shepherd*. As to the form of proof, the trial court properly found that the three acts proffered were charges rather than convictions. Because they were merely charges, the trial court reasoned that admission would have confused the issues by creating a mini trial within the trial. *(Markus) Johnson*, 960 A.2d at 294. Although the second and third assault charges were within five years from the trial, the first charge was from 2013, so the court properly exercised its discretion in finding the charge to be too remote in time for the trial that occurred in 2019.

Further, as to the type of violence evidenced by the prior act, the court properly exercised its discretion in finding that the prior charges were dissimilar to the violence alleged in Mr. Becton's case.[11]  First, the prior acts were all domestic assaults alleged by his wife or the mother of his child, but the alleged violence in Mr. Becton's case was not domestic.  Second, the trial court noted that Mr. Peoples was not alleged to have been intoxicated with PCP in the prior alleged incidents as he was in Mr. Becton's case.  Even if we accept Mr. Becton's view that Mr. Peoples's intoxication with PCP the night of the shooting could have been indicative of Mr. Peoples's violent tendencies, it was within the permissible bounds of discretion for the court to focus on the dissimilarity between the alleged actions and what we know Mr. Peoples did on the day of his death.  Therefore, because the trial court considered the factors in *Shepherd* and based its conclusions on facts within the record when ruling to exclude the decedent's prior domestic violence allegations, we conclude there was no erroneous exercise of discretion.

_____

[11] Although the trial court did not address the factor of the decedent's character in the interim, we "may affirm a decision for reasons other than those given by the trial court, provided there is a sufficient evidentiary basis and no procedural unfairness to the parties." *See Tuckson v. United States*, 77 A.3d 357, 360-61 (D.C. 2013) (internal quotation and citation omitted).  Based on the record, Mr. Peoples's last domestic violence allegation happened months before the shooting.  While not determinative, based on the record, the factor of decedent's character in the interim might have been in favor of admission.  However, where all the other factors weighed against admission, the trial court did not err in excluding the evidence.

**2.** **The government did not open the door to admission of the prior domestic violence allegations as first-aggressor evidence**

Additionally, we address Mr. Becton's argument that the trial court abused its discretion by excluding first-aggressor evidence when the government's evidence during trial opened the door to admission of such evidence. Mr. Becton contends that even if the court properly excluded Mr. Peoples's domestic violence allegations prior to trial, the court should have admitted this evidence when the government opened the door during trial. Mr. Becton argues the government opened the door to this evidence by eliciting testimony from Ms. Peoples and Ms. Moore. Specifically, Ms. Peoples stated (in response to the government's questions) that "[Mr. Peoples] was silly. He was funny. He liked to make people laugh. He liked to make people smile." She also testified that on the day of the shooting, Mr. Peoples was "[l]aughing, giggling, joking like he normally do." Similarly, Ms. Moore testified as a witness for the government, that on the night of the shooting, Mr. Peoples "was just joyful and loveable" and was joking around. Mr. Becton argues that he should have been allowed to rebut this evidence that portrayed Mr. Peoples as a peaceful jokester.

In its brief and during oral argument, the government argued that this testimony did not go towards Mr. Peoples's peaceful nature because jokesters can be violent and thus it was not inherently positive. While we disagree with the view

that evidence of someone's character as a "jokester" is not inherently positive (because a person's desire to make people laugh is typically perceived as a positive characteristic), we also do not agree with Mr. Becton that someone's character as a jokester is inherently peaceful. As previously stated, the case law allows defendants to present evidence of the decedent's bellicose and violent nature, *see Shepherd*, 144 A.3d at 558, but not in response to evidence of the decedent's general characteristics unrelated to violence or peacefulness. Because jovial is not synonymous with peaceful, we cannot determine that the trial court abused its discretion when ruling that such evidence did not open the door to evidence of Mr. Peoples's prior domestic violence incidents. Therefore, we conclude that the trial court was within its discretion to exclude Mr. Becton's first-aggressor evidence when the government elicited testimony of Mr. Peoples's jovial nature.

Next, we turn to the testimony that Mr. Becton argues portrayed Mr. Peoples as nonviolent and nonaggressive. On direct examination as a witness for the government, Ms. Moore testified that on the night of the shooting, Mr. Peoples was not angry or violent and she had never seen him be violent or aggressive when he was high. Additionally, during closing arguments, the government highlighted that there had been no evidence that Mr. Peoples was violent or aggressive. We recognize that the government's questioning and closing comments taken out of context appear to open the door; however, when placed in their proper context, they

referred to the night of the shooting instead of Mr. Peoples's character more broadly.

In its closing the government stated:

> The defense asked Ms. Peoples a number of questions about the fact that her husband had cheated on her, was with another woman who lived near Mellon Street, a woman Ms. Peoples talked to you about. And Mrs. Peoples told you that -- she told you what they were arguing about that day. But at no point, even in drudging up that painful memory of her husband, did she say that Kirk, even in arguing with [K]irk, was violent, aggressive, incoherent. She never said that he was intoxicated. Never said he was slurring his words. He was functional; in fact, she said he was jovial. He was a jokester.

We agree with the government's argument in its sur-reply brief, that the prosecutor's statements made in closing arguments were about Mr. Peoples's demeanor on the night of the shooting, not about his general temperament and behavior. Ms. Peoples did not describe Mr. Peoples as aggressive during their phone call that occurred the night of the shooting and Ms. Moore did not describe him as acting violently or aggressively when she was walking with him the night of the shooting. Both the testimony of the witnesses and the comments made during closing were about Mr. Peoples's demeanor the night of the shooting. Therefore, we conclude that the government did not open the door for admission of Mr. Peoples's prior domestic violence allegations.

Even assuming, without deciding that the door was opened, Mr. Becton's proffered first-aggressor evidence would not have been admitted because it would have to overcome a Rule 403 balancing test. *Goines v. United States*, 905 A.2d 795, 801 (D.C. 2006) ("[E]ven if the defense did open the door to the admission of such evidence, the trial court was required to determine 'if its probative value [was] substantially outweighed by the danger of unfair prejudice.'"). The trial court acted well within its discretion to exclude the domestic violence incidents, as merely allegations and not convictions, related to a domestic context, and having the potential to confuse the jury.

Accordingly, the trial court did not abuse its discretion by excluding such evidence as more prejudicial than probative.

### III. Conclusion

For the foregoing reasons,[12] we affirm Mr. Becton's convictions and the trial court's denial of Mr. Becton's Section 23-110 motion.

---

[12] There is no need to consider Mr. Becton's argument concerning the cumulative effect because the trial court did not commit error in excluding the decedent's prior domestic violence charges and it did not commit error by denying Mr. Becton's Section 23-110 motion for ineffective assistance of counsel. *See Young v. United States*, 305 A.3d 402, 431 (D.C. 2023) (determining that because no prejudicial errors warranted reversal, "the cumulative effect of any such errors did not prejudice [appellant]."); *see also United States v. Simmons*, 431 F. Supp. 2d 38, 54 (D.D.C. 2006) (declining to conduct a cumulative error (continued . . . )

*So ordered.*

---

analysis where "the rulings complained of are not found to be error"). Therefore, we do not discern any cumulative error.